UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-Cv-81292-Dimitrouleas
MAGISTRATE P. A. WHITE

JULIUS M. EGGLETON,          :

      Plaintiff,          :

v.                           :          REPORT OF
                                        MAGISTRATE JUDGE
OFFICER JACKSON, ET AL.,     :

      Defendants.          :

_____

## I. Introduction

Julius Eggleton filed a pro se civil rights amended complaint, pursuant to 42 U.S.C. §1983 asserting excessive force was used upon him during his December 19, 2008 arrest. (DE#50). In his initial complaint, Eggleton asserted, while seated as a passenger in a moving vehicle, Officer Jackson placed him in a choke hold, removed him from the van, threw him onto the ground and kicked him in the back, causing him medical problems. (DE#1). As defendants he named the City of Riviera Beach Police Department and Officer Jackson. (Id.). On October 20, 2009, the undersigned filed a preliminary report recommending that the claim of excessive force under the Fourth Amendment proceed against Jackson, but that the claim against the City of Riviera Beach Police Department be dismissed because police departments cannot be sued in a federal civil rights action. (DE#7).[1]

Later, with leave of court, Eggleton filed a pro se amended complaint, wherein he alleged a claim of excessive force and possibly, a false arrest claim. (DEs#49,50,55). As defendants, he once against named Officer Jackson of the City of Riviera Beach

_____

[1]On December 16, 2009, United States District Judge William P. Dimitrouleas adopted the preliminary report. (DE#13).

1

Department and further named (1) the City of Riviera Beach, Florida; (2) Riviera Beach Police Station;[2] (3) the Chief of Police; (4) Lieutenant A. Smith; (5) Sergeant Walker; (6) Officer Armour; (7) Officer Bines; (8) Officer R. Byrd; and (9) Officer R. Conde. (DE#50:5).

The amended complaint again asserted that Jackson engaged in excessive force when he pulled Eggleton out of the van through the passenger side window by way of a deadly choke hold, and then throwing him to the ground. (Id.:5). In his response to Jackson's summary judgement motion, Eggleton also raises a claim of malicious prosecution accusing the officers of lying in attempts to "cover up" their actions. (Id.; DE#69:1-4).

As for relief, Eggleton requested to be relocated from his current facility, he wants treatment for the trauma his children suffered from witnessing the illegal arrest, he wants treatment for his mental health, along with compensatory, declaratory, punitive damages and any other relief this court deems appropriate. (DE#1:7).

In response to the amended complaint, Jackson filed an answer and affirmative defenses (DE#59), a Motion for Final Summary

---

[2]Although the Preliminary Report correctly determined that the Riviera Beach Police Department must be dismissed because police departments cannot be sued in a federal civil rights action thus recommending that it be dismissed due to Plaintiff's failure to state a claim (DE#7:5), Eggleton nonetheless attempts to raise a claim against the police department in his amended complaint. (DE#50:2). As previously noted, the Preliminary Report was adopted by the district judge. (DE#13). Accordingly, a review of the docket reveals that as to said defendant the case is terminated. However, in abundance of caution it is still the recommendation of the undersigned that the Riviera Beach Police Station should remain dismissed for the following reason.

The Riviera Beach Police Station is not "a person" within the meaning of §1983 and thus may not be held liable in a civil rights suit for damages. Although certain governmental entities can under some circumstances be deemed "persons" within the meaning of §1983, under Florida law Sheriff's Departments and police departments are not governmental bodies.  They have no status as a legal entity and therefore cannot sue or be sued. See Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992).

Judgment (DE#52) and a Motion to Dismiss or Strike Eggleton's punitive damages claim. (DE#60). In response to Jackson's summary judgment motion, Eggleton filed a memorandum in opposition thereto (DE#69), which was followed by Jackson's reply.(DE#72).

As a result of the additional defendants listed on Jackson's amended complaint, the United States Marshal served Officers Armour, Smith, Walker, Byrd and Conde (DEs#78-82), all whom have filed answers and affirmative defenses, along with motions to dismiss or strike Jackson's punitive damages claim and motions for summary judgment. (Des#86-95,106-110). However, service was not executed on all of the additional defendants named in the amended complaint. The United States Marshal attempted to serve the defendant Officer Bines, but was informed that Bines was no longer employed by the Riviera Beach Police Department and his address was unknown. (DE#85). Moreover, as to the City of Riviera Beach and Chief of Police of the Riviera Beach Police Department, the allegations thereto are recommended to be dismissed for the reasons explained below.

A.   <u>Unserved Defendants</u>

   i.   *Officer Bines*

On September 30, 2010, service was ordered upon Police Officer Bines of the City of Riviera Beach Police Department, at government expense. (DE#62). Thereafter, on November 3, 2010, the Marshal returned the service un-executed and stated that he was unable to locate the individual. (DE#85). Specifically, the Marshal indicated that Officer Bines no longer worked for the City of Riviera Beach Police Department, but may be working for the Brevard County Sheriff. (Id.). Notwithstanding, the Marshal spoke with an individual from the personnel office at the Brevard County Sheriff's Office who stated they did not have an Officer Bines working for their department. (<u>Id.</u>). Thereafter, the Court issued an order to Eggleton requiring him to provide a current correct

address for Officer Bines since the Court is unable to effect
service upon a defendant without a current and accurate address.
(DE#96). To date, the Plaintiff has failed to provide an address
for Officer Bines.

There is no forwarding address for Officer Bines. It therefore
appears that as for this defendant, the complaint should be
dismissed pursuant to Fed.R.Civ.P. 4(m), which provides for
dismissal of a complaint which could not be served within 120 days
of its filing.

### ii.  City of Riviera Beach, Florida

While a municipality and its agencies are subject to liability
under §1983, such liability cannot result merely from an improper
or even unconstitutional act of its employees under a theory of
respondeat superior.  If a plaintiff sues a city, there must be
proof that the alleged injuries resulted from an official custom,
policy, or practice.  Monell v. Department of Social Services, 436
U.S. 658, 694 (1978); Mandel v. Doe, 888 F.2d 782 (11th Cir. 1989).
The plaintiff bears the burden of establishing a causal link
between a government policy or custom and the injury which is
alleged.  Byrd v. Clark, 783 F.3d 1002, 1008 (11th Cir.
1986)(citing Monell, supra).  The plaintiff references some legal
language concerning the concept of municipal liability in his
prayer for relief, but he raises no factual allegations to support
a claim of excessive force or false arrest against the City of
Riviera Beach.

### iii. City of Riviera Beach Police Department, Chief of Police

The plaintiff raises no specific allegations of wrongdoing
against the City of Riviera Beach police chief.  It appears that he
seeks to include this defendant in this action because he holds a
supervisory position. (See DE#50:6).  This he cannot do.  Public
officials in supervisory positions cannot simply be held
vicariously liable for the acts of their subordinates.  Robertson

<u>v. Sichel</u>, 127 U.S. 507 (1888); <u>Byrd v. Clark</u>, 783 F.2d 1002, 1008 (11th Cir. 1986). Nor can liability be predicated solely upon the doctrine of <u>respondeat superior</u> in a §1983 action. <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978); <u>Vineyard v. County of Murray, Georgia</u>, 990 F.2d 1207 (11th Cir. 1993).

B. <u>Plaintiff's Motion for Appointment of Counsel</u>

The plaintiff's motion for appointment of counsel is **denied.** (DE#50:8). A plaintiff in a civil case has no constitutional right to counsel. A court may, however, pursuant to 28 U.S.C. §1915(e)(1), request that an attorney represent an indigent plaintiff. The district court has broad discretion in making this decision, <u>see</u> <u>Bass v. Perrin</u>, 170 F.3d 1312, 1320 (11th Cir.1999); and should request the appointment of counsel only in exceptional circumstances, <u>see</u> <u>Dean v. Barber</u>, 951 F.2d 1210, 1216 (11th Cir. 1992). In this case, there are no exceptional circumstances that would require the appointment of counsel, as the facts of the case are straightforward. The plaintiff, like any other litigant, undoubtedly would be aided by the assistance of counsel, but this case is not so unusual that the appointment of counsel is necessary.

C. <u>Plaintiff's Claims</u>

*i. Excessive Force/Failure to Intervene*

In his amended complaint (DE#50), Eggleton alleges Jackson used excessive force which resulted in mental health injuries and all the other officers present during the apprehension failed to intervene.

*ii. False Arrest*

To the extent Eggleton alleges he was falsely arrested, these allegations challenge the constitutionality of his detention and thus should not be considered at this time. (DE#50).

The plaintiff's claims certainly call into question the legality or constitutionality of his criminal conviction, and are barred by Heck v. Humphrey, 512 U.S. 477, 486-487 (1994). Heck applies to suits filed by pretrial detainees. Alvarez-Machain v. United States, 107 F.3d 696, 700-01 (9th Cir. 1996); Hamilton v. Lyons, 74 F.3d 99, 102-03 (5th Cir. 1996). The FDOC website shows that the plaintiff was convicted of intent to sell cocaine within 1000 feet of a place of worship and possession of marijuana with intent to sell within 1000 feet of a place of worship. (DE#52,Ex.8).

Pursuant to Heck, if a prisoner brings such claims in a civil rights action, the complaint must be dismissed unless and until the reason for the confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus. Heck v. Humphrey, 512 U.S. at 486-487.

The Court notes that "[b]ecause an illegal search or arrest may be followed by a valid conviction, a successful §1983 action for alleged Fourth Amendment violations does not necessarily imply the invalidity of a conviction. As a result, Heck v. Humphrey, 512 U.S. 477, 486-487 (1994) does not generally bar such claims." Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir. 2003) (citations and quotations omitted). Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a §1983 action, even if successful, might not necessarily imply that the plaintiff's conviction was unlawful. See Wallace v. Smith, 145 Fed.Appx. 300, 301-302 (11th Cir. 2005). Courts must look both to the claims raised under §1983 and to the specific offenses for which the §1983 claimant was convicted. Vickers v. Donahue, 137 Fed. Appx. 285 (11th Cir. 2005).

In this case, Eggleton's allegation that he was falsely arrested is precisely the type of claim that is barred under Heck, as the factual basis for his constitutional claims would inevitably

undermine any conviction. Accordingly, Eggleton's claim does not qualify for the <u>Heck</u> exception for Fourth Amendment claims. Because the plaintiff's detention has not been remedied by any of the procedures listed in <u>Heck</u>, his claims are premature and thus not cognizable under §1983 at this time.

### iii. Malicious Prosecution

Finally, Eggleton's new claim of malicious prosecution (DE#69:1-3) is precluded from being raised for the first time in response to the defendants motion for summary judgment. <u>Gilmour v. Gates, McDonald & Co.</u>, 382 F.3d 1312, 1315 (11th Cir. 2004). Eggleton failed to raise the foregoing issue in his amended complaint and failed to seek leave of court to once again amend his pleadings to include the additional claim. Accordingly, because the new claim was not raised in compliance with the federal rules, he is precluded from doing so in his response.

## II. <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." <u>Fed.R.Civ.P.</u> 56(b). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled is entitled to judgment as a matter of law. <u>Greenberg v. Bell-South Telecomm., Inc.</u>, 498 F.3d 1258, 1263 (11th Cir. 2007)(*per curiam*); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Fed.R.Civ.P.</u> 56(c). Pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion, and identifying those portions of the record, including pleadings, discovery material, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. <u>Celotex v.</u>

<u>Catrett</u>, 477 U.S. 317, 323 (1986).

The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. <u>Celotex</u>, 477 U.S. at 322-324. If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11th Cir.), <u>cert. denied</u>, 112 S.Ct. 913 (1992).

Here, to survive defendant's properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" establishing proper exhaustion of administrative remedies. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). Plaintiff, the nonmoving party, bears the burden of coming forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. <u>Earley v. Champion International Corp.</u>, 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. <u>Celotex</u>, 477 U.S. at 322-23.

"<u>Pro se</u> pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." <u>Tannenbaum v. United States</u>, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." <u>Brown v. Crawford</u>, 906 F.2d 667, 670 (11th Cir. 1990). Accordingly, the nonmoving party, even if a <u>pro se</u> prisoner, cannot rely solely on his complaint and other

initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987).

If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 252).

Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)(grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations . . . ."); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."). Thus, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. Celotex, 477 U.S. at 322; Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir. 1987).

For summary judgment purposes, only disputes involving

material facts are relevant. <u>United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida</u>, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. <u>Anderson</u>, 477 U.S. at 248; <u>Lofton v. Secretary of the Department of Children and Family Services</u>, 358 F.3d 804, 809 (11th Cir. 2004)("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." <u>McCormick v. City of Fort Lauderdale</u>, 333 F.3d 1234, 1243 (11th Cir. 2003)(citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. <u>Celotex</u>, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); <u>Waddell</u>, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. <u>Beard v. Banks</u>, 548 U.S. 521, 525 (2006); <u>Brown v. Crawford</u>, 906 F.2d 667, 670 (11th Cir. 1990). Thus, Plaintiff's <u>pro se</u> status alone does not mandate this court's

disregard of elementary principles of production and proof in a civil case.

### III. Qualified Immunity

The defendant, aside from arguing that he did not violate the plaintiff's Fourth and Eighth Amendment rights, also argues he is entitled to qualified immunity. (See Des#59). Eggleton's amended complaint, however, is silent on whether the defendant was sued in his individual and/or official capacities.

While a plaintiff has a duty to make plain who they are suing, see Colvin v. McDougall, 62 F.2d 1316 1318 (11th Cir. 1995), a plaintiff is not always required to designate with particular words in his pleading that the action was brought against defendants in their individual or official capacities, or both see Hobbs v. Roberts, 999 F.2d 1526, 1529-30 (11th Cir. 1993). How a complaint and claims are construed, in regard to the capacities in which the defendants are being sued, may depend on the nature of the claims raised, and defenses asserted. See Adams v. Franklin, 111 F.Supp. 1255 (M.D.Ala. 2000).

The plaintiff, a pro se litigant, seeks damages for Jackson's alleged excessive force, it is illogical that he would intend to bring the aforementioned claims against the defendant in a capacity that would fail if the named individual was replaced by a successor. Thus, it appears that Eggleton's claim should be construed as having been raised against Jackson in his individual capacity.

The defense of qualified immunity offers "complete protection for government officials sued in their individual capacities as long as 'their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known.'" Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir.2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982))(additional quotations omitted). The purpose of this immunity is to allow

government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, see Anderson v. Creighton, 483 U.S. 635, 638 (1987), protecting from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir.2001). Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible. Hunter v. Bryant, 502 U.S. 224, 227 (1991); GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1370 (11th Cir.1998).

Qualified Immunity attaches to discretionary conduct of government officials that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See Mitchell v. Forsyth, 472 U.S. 511, 528 (1985) (officers immune unless their actions were "clearly proscribed" by established law). Thus, in order to receive qualified immunity, the public official "must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir.1991) (quoting Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir.1988)). If the defendant was not acting within his discretionary authority, he is ineligible for the benefit of qualified immunity. But once the defendant establishes that he was acting within his discretionary authority, the burden then shifts to the plaintiff to show that qualified immunity is not appropriate. See Id.

The Supreme Court has set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party assert-ing the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001) (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991). If no constitutional right would have been violated were the

12

allegations established, there is no necessity for further inquiries concerning qualified immunity. <u>Saucier v. Katz</u>, <u>supra</u>, 533 U.S. at 201. On the other hand, if a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." <u>Id.</u> This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Id.</u>; <u>see also</u> <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1031-33 (11th Cir.2001) (en banc).

The right in question cannot be simply a generalized right, like the right to due process, <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987). Rather, it must be clearly established in a "particularized" sense, so that "the contours of the right" are clear enough for any reasonable official in the defendant's position to know that what the official is doing violates that right. <u>Anderson</u>, <u>supra</u>, 483 U.S. at 639-40. As a rule, a right is "clearly established" when it is enunciated by a court of controlling authority in the defendant's jurisdiction in a case sufficiently similar in its facts "that a reasonable officer could not have believed that his [instant] actions were lawful." <u>Wilson v. Layne</u>, 526 U.S. 603, 616-617 (1999). While "general statements of the law are not inherently incapable of giving fair and clear warning," they do so only if their application to a specific set of facts is apparent. <u>United States v. Lanier</u>, 520 U.S. 259, 271 (1997). The Court of Appeals for the Eleventh Circuit has held that in this Circuit the law can be "clearly established" for qualified immunity purposes, "only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." <u>Jenkins v. Talladega City Bd. of Education</u>, 115 F.3d 821, 826-27 n. 4 (11th Cir. 1997) (en banc).

## IV. <u>Excessive Force Standard/Failure to Intervene</u>

Claims that police officers used excessive force to seize a citizen, or were present and failed to intervene, are cognizable under section 1983. <u>Graham v. Connor</u>, 490 U.S. 386 (1989); <u>Fundiler</u>

v. Cooper City, 777 F.2d 1436, 1442 (11th Cir. 1985); Hadley v. Gutierrez, 526 F.3d 1324, 1329 (11th Cir. 2008). Fourth Amendment jurisprudence "has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). Whether a use of force is "reasonable" under the Fourth Amendment requires balancing the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests. Tennessee v. Garner, 471 U.S. 1, 7-8 (1985); United States v. Place, 462 U.S. 696, 703 (1983). When a court balances the necessity for force against the arrestee's constitutional rights it considers the facts and circumstances of each particular case including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

In determining whether the use of force in a particular case was reasonable, a court must consider whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him without regard to underlying intent or motivation. See Scott v. United States, 436 U.S. 128, 137-39 (1978) (officer's subjective state of mind does not invalidate action as long as the circumstances, viewed objectively, justify it); Terry v. Ohio, 392 U.S. 1, 20-22 (1968) (reasonableness is viewed from the perspective of a reasonable officer on the scene without the benefit of hindsight). Factors used to determine whether force was objectively reasonable include: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically." Hadley, 526 F.3d at 1329.

Qualified immunity applies if the force a police officer applied was reasonable under the circumstances and not excessive, entitling the officer to summary judgment. Moore v. Gwinnett

County, 967 F.2d 1495, 1498 (11th Cir. 1992); see Saucier v. Katz, 533 U.S. 194 (2001) (government officials insulated from personal liability for actions taken pursuant to their discretionary authority), receded from by, Pearson v. Callahan, 129 S.Ct. 808 (2009). Qualified immunity applies to a city official's 1983 violation unless the plaintiff can demonstrate the official's actions violated clearly established constitutional law of which a reasonable person would have known. Priester v. City of Riviera Beach, 208 F.3d 919, 925 (11th Cir. 2000). A constitutional right is clearly established if the state law at the time of the incident gave officials fair warning their behavior was unlawful. Hope v. Pelzer, 536 U.S. 730, 741 (2002). Law is "clearly established" for official immunity purposes by decisions of the United States Supreme Court, Eleventh Circuit Court of Appeals or the highest state court. Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998). To show an official is not entitled to immunity, the plaintiff must point to earlier case law that is "materially similar . . . and therefore provided clear notice of violation," or to "general rules of law from a federal constitutional or statutory provision or earlier case law that applied with obvious clarity to the circumstances" and clearly established the conduct was unlawful. Trammell v. Thomason, 2009 WL 1706591 at *5 (11th Cir. 2009) (quoting Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007)). If use of force was objectively reasonable under the circumstances, there is no need to address whether the constitutional right at issue was clearly established. Crenshaw v. Lister, 556 F.3d 1283, 1293 (11th Cir. 2009). A narrow exception to the requirement for particularized case law exists where "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." Priester, 208 F.3d at 926.

## V. Discussion

According to Eggleton, on December 19, 2008, while seated as a passenger in his wife's vehicle, he and his family made a stop at

a gas station. (DE#1:5). Shortly after entering the gas station's convenience store, he noticed Riviera Beach police officers set a perimeter around the station. (Id.). He exited the convenience store making remarks to Lieutenant A. Smith, whom was parked adjacent to Eggleton's vehicle, but Smith did not respond. (Id.). Eggleton again returned to the store to make some purchases, and upon exiting the store, he made another attempt to speak to Smith, but no response was given. (Id.).

Eggleton entered the van's passenger side. As his wife began to drive away, Jackson approached Eggleton, placed him in a deadly choke hold, pulled him out of the window and threw him onto the ground. (Id.). As such, Eggleton accuses Jackson of unnecessarily exhibiting excessive force when there was ample opportunity to apprehend him prior to entering the van. (Id.). As a result of Jackson's conduct, Eggleton alleges he has suffered continuous neck and back pain.

According to Jackson's undisputed facts, he asserts that on or about December 19, 2008, a joint operation involving the Riviera Beach Police Department, the DEA and the U.S. Marshals (the "round up") was organized with the purpose of executing multiple outstanding warrants for a variety of individuals in Riviera Beach, Florida. (DE#52:2; DE#52,Ex.A). Jackson, was one of the Riviera Beach police officers included in the round up. (Id.). The round up was a success leading to the detainment and arrest of several individuals with outstanding warrants, including Eggleton. (Id.).

Prior to the date of arrest, an arrest warrant had been issued for Eggleton by a Fifteenth Judicial Circuit Judge, authorizing his arrest for sale of marijuana within 1000 feet of a place of worship. (DE#52,Ex.A).

Smith's affidavit explains he was a participant in a joint operation involving the Riviera Beach Police Department, the DEA and the U.S. Marshals on December 19, 2008 for the purpose of executing multiple outstanding warrants for a several individuals

in Riviera Beach, Florida. (DE#52,Ex.2:1). The roundup resulted in the arrest of said individuals, including Eggleton. (Id.:1-2). Specifically, Eggleton was arrested at the parking lot of a convenience store/gas station located at 401 Old Dixie Highway, Riviera Beach, Florida 33404. (Id.:2). Immediately prior to his arrest, Smith recognized Eggleton at the aforementioned location and alerted the other officers to his presence. (Id.). At no time does Smith recall any complaints of any injuries to any arrestee or officer during the round up. (Id.). Specifically, Eggleton did not inform the arresting officers of injury during his apprehension, immediately following same, or any time thereafter while in custody of the arresting officers. (Id.). Smith further asserts that the amount of force, if any, used during Eggleton's arrest was not excessive, was not likely to result in injury and was necessary to successfully detain him. (Id.). Finally, at no time during the round up did Eggleton speak or attempt to speak with Smith. (Id.).

A review of Jackson's affidavit also reveals he was a participant in the round up for the same purpose Smith served in the joint operation. (DE#52,Ex.3:1; See DE#52,Ex.2). According to Jackson, after Eggleton was identified, Eggleton entered the passenger side of a van driven by his girlfriend, and he instructed her to drive. (DE#52,Ex.3:2). Jackson, while facing the front of the van, instructed the driver to stop, which she subsequently did. (Id.). Despite Eggleton's allegations, Jackson did not remove Eggleton from the van. (Id.). Jackson did not physically assist in plaintiff's removal from the van or his ultimate arrest. (Id.). Jackson never touched Eggleton during his arrest. (Id.). Further, Jackson asserts he does not recall ever touching Eggleton at all during the round up. (Id.). Finally, Jackson does not recall any complaints of injuries to any arrestee or officer during the round up. (Id.). Specifically, Eggleton never informed the arresting officers of injury during his arrest, immediately following same, or any time thereafter while in the arresting officers' custody. (Id.).

The probable cause affidavit attached to the arrest form

reveals that search incident to arrest, Agent Conde retrieved 12 blue plastic zip lock bags containing suspected marijuana and 8 green plastic bags containing suspected powder cocaine from Eggleton's front right pocket of his pants. (DE#52,Ex.5:2). After Agent Conde tested the suspected drugs using the NIK Field Test Kit confirmed, they tested positive. (Id.). The total weight for the marijuana was 19.7 grams and the total weight for the cocaine was 3.3 grams. (Id.). The affidavit confirmed Eggleton's arrest location was only 67 feet away from a place of worship. (Id.). Ultimately, he was charged with possession of cocaine with intent to sell within 1000 feet of a church and possession of marijuana with intent to sell within 1000 feet of a church. (Id.; DE#52,Ex.6).

On December 20, 2008, Judge Jack S. Cox from the Fifteenth Judicial Circuit entered an Order finding that probable cause existed for the aforementioned pending charges and set Eggleton's bond. (DE#52,Ex.7). Thereafter, on October 1, 2009, the court entered judgment finding Eggleton guilty of intent to sell cocaine within 1000 feet of a place of worship and possession of marijuana with intent to seel within 1000 feet of a place of worship in case number 2008-CF-018208. (DEs#52,Ex.8). He was also adjudicated guilty of sale of marijuana within 1000 feet of a place of worship in case number 2008-CF-018102. (DE#52,Ex.4).

In his memorandum opposing Jackson's summary judgment motion, Eggleton alleges the officers are trying to "cover up" something and they are lying under oath, resulting in conflicting statements. (DE#69:2). In support of this assertion, Eggleton provided a sworn statement of facts wherein he claims Officer Conde's deposition transcript reveals conflicting statements. (Id.:4). He also alleges, without any substantiation that three different statements from three different officers exist. (Id.). According to Eggleton, Conde's deposition reveals that Conde was unable to recall whether

an Officer Jackson[3] was present at the scene, whether Eggleton was inside or outside the vehicle and whether any other individuals were with Eggleton, specifically a female. (DE#69, Deposition Transcript of Officer Conde:8-9).

Notwithstanding, Jackson argues that Eggleton's claims that Conde's deposition statements show the existence of a cover up because Conde's recollection of the events are not reflective of Eggleton's own memories is not dispositive. (DE#72:7). Specifically, Eggleton asserts that although Conde testified that he was the arresting officer, he nonetheless failed to recall whether Eggelton was inside of a vehicle at the time of the arrest, whereas Jackson's affidavit stated that Eggleton was in a van. (Id.; DE#72,Ex.A:4-5). Notwithstanding Eggleton's arguments, Conde never definitively testified regarding Eggleton's location prior to the arrest, but rather simply stated that he did not recall Eggleton being in the vehicle. (Id.).

Moreover, Conde testified that the other people in his unit were Officer Rivera and another individual. (DE#72:7, DE#72,Ex.A:14-17). Although Conde did not remember the other individual, he stated that it was possibly Officer Steve Thomas. (Id.). Conde further testified that he did not recall if any of the Jacksons were present at the time of the subject arrest. (Id.).

Thus, Eggleton appears to believe that the variables contained within Conde's deposition and Jackson's affidavit necessarily establish the fact that both were lying with a malicious intent. (DE#72:8). However, Jackson explains that his and Conde's statements are not invariably at odds. (Id.). Conde states that he approached Jackson, identified himself and explained that he was under arrest for the sale of marijuana. (DE#72,Ex.A:9-10). However, Conde's testimony is devoid of any action taken prior to approaching Eggleton either by him or any other officer. (Id.).

---

[3]The deposition reveals that several Officer Jacksons worked with the Riviera Beach Police Department at the time of the arrest. (DE#69, Deposition Transcript of Officer Conde:8).

19

Accordingly, without any further information or any evidence supporting Eggleton's contentions relating to a "cover up," said contentions are nothing more than bald assertions. (Id.).

Moreover, Jackson's points out that Eggleton failed to attach a single affidavit or other sworn statement that supports his version of the subject arrest. (DE#72,9). The only sworn statement Eggleton relies upon in support of his response places Jackson outside of a vehicle at the time the subject arrest occurred and demonstrates the existence of no force used during same. (Id.). Likewise, Eggleton points to no record evidence supporting his assertion that Jackson is not entitled to qualified immunity. (Id.).

The undisputed record evidence shows that Jackson did not deprive Eggleton of his Fourth Amendment right to be free from excessive force as Jackson, short of instructing the driver to stop the van, did not remove Eggleton from the van, did not physically assist in Eggleton's removal from the van or his ultimate arrest; did not touch Eggleton during his arrest, does not recall touching Eggleton at all during the round up. Moreover, Eggleton has failed to show the existence of any injury. No documents or testimony/opinions from doctors proffered regarding the extent or presence of any injury. Likewise, he has failed to connect any alleged injury to the arrest at issue.

Even if we were to assume without deciding and viewing the facts in the light most favorable to Eggleton, the amount, if any, of force used in executing the arrest warrant was reasonable under the circumstances as Eggleton was known to be an escape risk and had an extensive criminal history. (DE#52,Ex.6,I). Eggleton tacitly agreed the vehicle in which he was a passenger was in motion during the arrest. (DE#50:5). Moreover, a choke hold or removal of a passenger from a vehicle, without more, constitutes the use of *de minimis* force. See Brown v. city of Huntsville, AL, 608 F.3d 724 (11th Cir. 2010)(holding that officer's actions of assisting arresting officer in pulling driver out of car did not amount to

excessive force); <u>see also</u> <u>Ainsworth v. City of Tampa</u>, 2010 WL 2220247 (M.D. Fla. 2010)(holding that forcible removal of plaintiff from a vehicle, including slamming plaintiff's body to the ground and allegedly causing serious injuries, including a severely herniated disk and injuries to the left shoulder requiring surgical repair constituted *de minimus* force); <u>Post v. City of Ft. Lauderdale</u>, 7 F.3d 1552, 1559 (11th Cir. 1993)(subduing the suspect with a choke hold and pushing the suspect against a wall was *de minimis* force). Evidently, application of *de minimis* force, without anything more, is insufficient to prevail a claim for excessive force in violation of the Fourth Amendment. <u>See</u> <u>Nolin v. Isbell</u>, 207 F.3d 1253, 1257-58 (11th Cir. 2000). Accordingly, even if Jackson had in fact placed a choke hold on Eggleton while trying to retrieve him from a moving vehicle to effectuate an arrest, Jackson's actions were not excessive.

Thus, Officer Jackson is entitled to qualified immunity since he did not violate Jackson's clearly established rights with respect to an incident he did not partake in other than directing the driver of the vehicle, wherein Eggleton was a passenger, to stop driving. Accordingly, Officer Jackson's motion for entry of summary judgment is **granted**.

## VI. <u>Pending Motion to Dismiss or Strike Punitive Damages Claim</u>

Jackson has filed a Motion to Dismiss or Strike Punitive Damages claim, wherein he argues that although Eggleton demands punitive damages as a result of his alleged injuries, he nonetheless failed to provide any basis for the entitlement thereof. (DE#60).

Specifically, Jackson seeks to dismiss/strike Eggleton's prayers for punitive damages included in all counts of the complaint on the ground that the claims are conclusory and fail to provide specific allegations of fact to justify an award of punitive damages. (DE#60). As such, Eggleton's claim for punitive

damages must be dismissed/stricken. (Id.). Likewise, Jackson asserts Eggleton has failed to plead that Jackson acted with any degree of reckless or callous indifference to his federally protected rights. (DE#60:4). Eggleton has failed to plead that anyone involved in his arrest was motivated by evil motive or intent. (Id.). In fact, Jackson argues, the only mention of punitive damages in Eggleton's complaint is in requesting they be awarded without providing insight as to why he feels he is entitled to them. (Id.). In conclusion, Jackson asserts Eggleton's amended complaint failed entirely to adequately allege any basis supporting his demand for punitive damages as he failed to plead any factual allegations which supports said demand. (Id.).

The general rule is that punitive damages may be imposed only if the defendant has acted willfully and with gross disregard for the plaintiff's rights. Clark v. Beville, 730 F.2d 1984 (11th Cir. 1984); citing Gore v. Turner, 563 F.2d 159, 164 (5th Cir. 1977). The award of punitive damages involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent to future illegal conduct. Id.; citing Lee v. Southern Home Sites Corp., 429 F.2d 290, 294 (5th Cir. 1970); see also Roberts v. Marino, 656 F.2d 1112, 1113 (5th Cir. 1981); citing Carey v. Piphus, 435 U.S. 247, 257 n.11, 98 S.Ct. 1042, 1048 n.11, 55 L.Ed.2d 252, 260 n.11 (1978) (punitive damages may be awarded with the specific purpose of deterring or punishing a violation of constitutional rights). See McCulloch v. Glasgow, 620 F.2d 47, 51 (5th Cir. 1980); Fielder v. Bosshard, 590 F.2d 105 (5th Cir. 1979); Palmer v. Hall, 517 F.2d 705 (5th Cir. 1975). "If the state officer's action caused severe injuries, was grossly disproportionate to the need for action under the circumstances and was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience, it should be redressed under Section 1983." Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981).

Aside from Eggleton's mention of punitive damages in his

amended complaint requesting they be awarded, he vaguely alleges that Jackson acted with malicious and sadistic intent when Jackson allegedly placed Jackson in a choke hold and pulled him out of a moving vehicle. (DE#50:6). In his response, Eggleton again asserts he was removed from a moving vehicle with malicious intent and abuse of power including the other officers who failed to intervene. (DE#69:2). As part of his response, Eggleton included a statement of facts arguing summary judgment, wherein he asserts that Jackson's actions subsequently caused injuries to his back and neck, mental damages of stress, anxiety and fear. (DE#69:4).

Notwithstanding his allegations, Eggleton fails to rebut the affidavits and reports description of Officer Jackson's limited involvement. As discussed above in more detail, Jackson's affidavit, in conjunction with Conde's deposition, demonstrates that Jackson was not involved in Eggleton's apprehension and/or arrest, never touched Eggleton during the round up, never removed Eggleton from the van, never physically assisted in Eggleton's removal from the van or his ultimate arrest. (See DE#52,Ex.3; DE#52,Ex.5; DE#69:13-31).

Since insufficient evidence exists that Officer Jackson was motivated by malice and used excessive force in effectuating the arrest of Eggleton, his punitive damages claim should be hereby dismissed. Accordingly, Jackson's motion to dismiss/strike punitive damages should be **granted**.

### VII. Conclusion

It is therefore recommended:

(1) the complaint against defendant Bines, who could not be served with process, be dismissed pursuant to Fed.R.Civ.P. 4(m);

(2) the defendants City of Riviera Beach, Florida and City of Riviera Beach Police Department, Chief of Police be dismissed as parties to this action;

(3) the plaintiff's motion for appointment of counsel be denied;

(4) as to plaintiff's claim for false arrest, the claim is barred pursuant to <u>Heck v. Heck v. Humphrey</u>, 512 U.S. 477 (1994);

(5) the motion for summary judgment by defendant Jackson (DE#52) be granted;

(6) the motion to dismiss or strike plaintiff's punitive damages claim be granted;

(7) and this case shall remain pending as to all other defendants.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: January 12<u>th</u>, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc:  Julius M. Eggleton, pro se
     DC# 184064
     South Bay Correctional Facility
     600 U.S. Highway 27 South
     South Bay, FL 33493

     Benjamin Lawrence Bedard, Esq.
     Roberts Reynolds Bedard & Tuzzio
     470 Columbia Drive
     Building C - 101
     West Palm Beach, FL 33409-0709