```
                                    UNITED STATES DISTRICT COURT
                                    SOUTHERN DISTRICT OF FLORIDA

                                    CASE  NO.  09-Cv-81292-Dimitrouleas
                                         MAGISTRATE P. A. WHITE
JULIUS M. EGGLETON,           :

        Plaintiff,            :

v.                            :           REPORT OF
                                       MAGISTRATE JUDGE
OFFICER JACKSON, ET AL.,      :

        Defendants.           :
_____
```

## I. Introduction

Julius Eggleton filed a _pro se_ civil rights amended complaint, pursuant to 42 U.S.C. §1983 asserting excessive force was used upon him during his December 19, 2008 arrest. (DE#50). In his initial complaint, Eggleton asserted, while seated as a passenger in a moving vehicle, Officer Jackson placed him in a choke hold, removed him from the van, threw him onto the ground and kicked him in the back, causing him medical problems. (DE#1). As defendants he named the City of Riviera Beach Police Department and Officer Jackson. (_Id._).

With leave of court, Eggleton filed a _pro se_ amended complaint, wherein he raised claims of excessive force, failure to intervene, and false arrest, once again naming Officer Jackson of the City of Riviera Beach Department and further named (1) the City of Riviera Beach, Florida; (2) Riviera Beach Police Station; (3) the Chief of Police; (4) Lieutenant A. Smith; (5) Sergeant Walker; (6) Officer Armour; (7) Officer Bines;[1] (8) Officer R. Byrd; and (9) Officer R. Conde. (DEs#49,50:6,55).

---

[1] As may be recalled, the complaint against Bines was previously dismissed pursuant to Fed.R.Civ.P. 4(m), for failure to be served with process. (DE#125).

1

The amended complaint asserts Smith, Walker, Amour, Bines, Conde and Byrd failed to intervene when Jackson engaged in excessive force when he pulled Eggleton out of the van through the passenger side window by way of a deadly choke hold, and then throwing him to the ground. (Id.:5). In his response to Jackson's summary judgement motion, Eggleton also raised a claim of malicious prosecution accusing the officers of lying in attempts to "cover up" their actions. (Id.; DE#69:1-4).[2]

As for relief, Eggleton requested to be relocated from his current facility, treatment for the trauma his children suffered from witnessing the illegal arrest, treatment for his mental health, along with compensatory, declaratory, punitive damages and any other relief this court deems appropriate. (DE#1:7).

On January 13, 2011, the undersigned issued a Report and Recommendation as to defendant Jackson only, making the following recommendations: (1) the complaint against defendant Bines, who could not be served with process, be dismissed pursuant to Fed.R.Civ.P. 4(m); (2) the defendants City of Riviera Beach, Florida and City of Riviera Beach Police Department, Chief of Police be dismissed as parties to this action; (3) the plaintiff's motion for appointment of counsel be denied; (4) as to plaintiff's claim for false arrest, the claim is barred pursuant to Heck v. Humphrey, 512 U.S. 477 (1994);(5) the motion for summary judgment by defendant Jackson (DE#52) be granted;(6) the motion to dismiss or strike plaintiff's punitive damages claim be granted;(7) and the case was to remain pending as to all other defendants. (DE#125). Thereafter, the District Court, on February 1, 2011, issued an Order adopting the undersigned's Report. (DE#134).

As a result of the additional defendants listed on Jackson's amended complaint, the United States Marshal served Officers

---

[2]Plaintiff's claim of malicious prosecution was precluded from review because it was raised for the first time in response to the defendants motion for summary judgment. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).

Armour, Smith, Walker, Byrd and Conde (DEs#78-82), all whom have filed answers and affirmative defenses, along with motions to dismiss or strike Jackson's punitive damages claim and motions for summary judgment. (DEs#86-95,106-110). This matter is before this Court on the defendants' Smith, Byrd, Armour, Walker and Conde's motions for summary judgment. (DEs#106,107,108,109,110). In response to the defendants' summary judgment motions, Eggleton filed a memorandum in opposition thereto (DE#128), which was followed by replies by all remaining defendants.(DEs#129-133).

A. <u>Plaintiff's Claim as to the Remaining Defendants</u>

   *i. Failure to Intervene*

As already discussed, in his amended complaint (DE#50), Eggleton alleges Smith, Byrd, Amour, Walker and Conde failed to intervene when Jackson used excessive force in effectuating his arrest, resulting in mental health injuries.

## II. <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." <u>Fed.R.Civ.P.</u> 56(b). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled is entitled to judgment as a matter of law. <u>Greenberg v. Bell-South Telecomm., Inc.</u>, 498 F.3d 1258, 1263 (11th Cir. 2007)(*per curiam*); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Fed.R.Civ.P.</u> 56(c). Pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion, and identifying those portions of the record, including pleadings,

discovery material, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986).

The movant may meet this burden by presenting evidence which would be admissible at trial indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-324. If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.), cert. denied, 112 S.Ct. 913 (1992).

Here, to survive defendant's properly supported motion for summary judgment, the plaintiff is required to produce "sufficient [favorable] evidence" establishing proper exhaustion of administrative remedies. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Plaintiff, the nonmoving party, bears the burden of coming forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). The non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. Celotex, 477 U.S. at 322-23.

"Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). However, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667,

670 (11th Cir. 1990). Accordingly, the nonmoving party, even if a pro se prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11th Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11th Cir. 1987).

If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249-50; Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11th Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 252).

Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. Waddell v. Valley Forge Dental Associates, Inc., 276 F.3d 1275, 1279 (11th Cir. 2001); Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997); Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)(grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations . . . ."); Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984)("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment . . . ."). Thus, when a plaintiff fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. Celotex, 477 U.S. at 322; Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir. 1987).

For summary judgment purposes, only disputes involving material facts are relevant. United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. Anderson, 477 U.S. at 248; Lofton v. Secretary of the Department of Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004)("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003)(citation omitted). To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. Celotex, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); Waddell, 276 F.3d at 1279 (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation by the courts, a pro se litigant does not escape the burden of establishing by sufficient evidence a genuine issue of material fact. Beard v. Banks, 548 U.S. 521, 525 (2006); Brown v. Crawford, 906 F.2d 667, 670 (11th Cir. 1990). Thus,

Plaintiff's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

### III. Qualified Immunity

The defendants, aside from arguing they did not violate the plaintiff's Fourth and Eighth Amendment rights, also argue they are entitled to qualified immunity. (See DEs#86,88,90,92,94). Eggleton's amended complaint, however, is silent on whether the defendants were sued in their individual and/or official capacities.

While a plaintiff has a duty to make plain who they are suing, see Colvin v. McDougall, 62 F.2d 1316 1318 (11th Cir. 1995), a plaintiff is not always required to designate with particular words in his pleading that the action was brought against defendants in their individual or official capacities, or both see Hobbs v. Roberts, 999 F.2d 1526, 1529-30 (11th Cir. 1993). How a complaint and claims are construed, in regard to the capacities in which the defendants are being sued, may depend on the nature of the claims raised, and defenses asserted. See Adams v. Franklin, 111 F.Supp. 1255 (M.D.Ala. 2000).

The plaintiff, a pro se litigant, seeks damages for the defendants' alleged failure to intervene, therefore it is illogical that he would intend to bring the aforementioned claims against the defendants in a capacity that would fail if the named individuals were replaced by a successor. Thus, it appears that Eggleton's claim should be construed as having been raised against the defendants in their individual capacities.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Saucier v. Katz, 533 U.S. 194, 200 (2001)(quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The purpose of the qualified immunity defense is to "protect[] government officials 'from liability for civil damages

7

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. ___, ___, 129 S. Ct. 808, 815, 172 L.Ed.2d 565 (2009) (*quoting* Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Youmans v. Gagnon, 626 F.3d 557, 562-63 (11th Cir. 2010). Qualified immunity shields from suit "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)(quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001)).

In Saucier, supra, the Supreme Court set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Lee, supra at 1194 (quoting Saucier, 533 U.S. 194, 201); and then, if a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine "whether the right was clearly established." Lee, supra, 284 F.3d at 1194 (quoting Saucier, supra). This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Marsh v. Butler County, 268 F.3d 1014, 1031-33 (11th Cir. 2001)(*en banc*). Following the Supreme Court's decision in Pearson, the courts are free to consider the elements in either sequence and to decide the case on the basis of either element that is not demonstrated. See Pearson v. Callahan, 129 S.Ct. at 818; Youmans v. Gagnon, 626 F.3d at 562-63. Consequently, the Saucier test is no longer mandatory, but is to be used as a guideline when appropriate. Id.

The right in question cannot be simply a generalized right, like the right to due process, Anderson v. Creighton, 483 U.S. 635 (1987). Rather, it must be clearly established in a "particularized" sense, so that "the contours of the right" are clear enough for any reasonable official in the defendant's position to know that what the official is doing violates that

right. Anderson, supra, 483 U.S. at 639-40. As a rule, a right is "clearly established" when it is enunciated by a court of controlling authority in the defendant's jurisdiction in a case sufficiently similar in its facts "that a reasonable officer could not have believed that his [instant] actions were lawful." Wilson v. Layne, 526 U.S. 603, 616-617 (1999). While "general statements of the law are not inherently incapable of giving fair and clear warning," they do so only if their application to a specific set of facts is apparent. United States v. Lanier, 520 U.S. 259, 271 (1997). The Court of Appeals for the Eleventh Circuit has held that in this Circuit the law can be "clearly established" for qualified immunity purposes, "only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega City Bd. of Education, 115 F.3d 821, 826-27 n. 4 (11th Cir. 1997) (en banc).

Qualified immunity applies if the force a police officer applied was reasonable under the circumstances and not excessive, entitling the officer to summary judgment. See Baptiste v. Gutierrez, Moore v. Gwinnett County, 967 F.2d 1495, 1498 (11th Cir. 1992); see Saucier v. Katz, 533 U.S. 194 (2001) (government officials insulated from personal liability for actions taken pursuant to their discretionary authority), receded from by, Pearson v. Callahan, 129 S.Ct. 808 (2009). Qualified immunity applies to a city official's 1983 violation unless the plaintiff can demonstrate the official's actions violated clearly established constitutional law of which a reasonable person would have known. Priester v. City of Riviera Beach, 208 F.3d 919, 925 (11th Cir. 2000). A constitutional right is clearly established if the state law at the time of the incident gave officials fair warning their behavior was unlawful. Hope v. Pelzer, 536 U.S. 730, 741 (2002). Law is "clearly established" for official immunity purposes by decisions of the United States Supreme Court, Eleventh Circuit Court of Appeals or the highest state court. Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998).

To show an official is not entitled to immunity, the plaintiff

must point to earlier case law that is "materially similar . . . and therefore provided clear notice of violation," or to "general rules of law from a federal constitutional or statutory provision or earlier case law that applied with obvious clarity to the circumstances" and clearly established the conduct was unlawful. Trammell v. Thomason, 2009 WL 1706591 at *5 (11th Cir. 2009)(quoting Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007)). If use of force was objectively reasonable under the circumstances, there is no need to address whether the constitutional right at issue was clearly established. Crenshaw v. Lister, 556 F.3d 1283, 1293 (11th Cir. 2009). A narrow exception to the requirement for particularized case law exists where "the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." Priester, 208 F.3d at 926.

### IV. Failure to Intervene Standard

Just as a claim of excessive force by an arresting officer is cognizable under 42 U.S.C. §1983, so too is a claim that an officer who himself did not use force, but was present, failed to intervene to prevent unconstitutional force by a fellow officer, if circumstances were such that intervention was possible. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985).

An officer, who is not the one using force, may still have a duty to "intervene" and prevent his fellow officer from committing the alleged unlawful act. See Fundiller v. City of Cooper City, 777 F.2d 1436, 1441-42 (11th Cir. 1985)(claims of excessive force are cognizable under §1983, as are claims of nonfeasance by an officer present at the scene who fails to take steps to protect a victim from a fellow officer's use of excessive force); and Velazquez v. City of Hialeah, 484 F.3 1340, 1342 (11th Cir. 2007)("an officer who is present at such beating [a fellow officer's excessive use of force] and fails to intervene may be held liable though he administered no blow"). If events occur too quickly for the officer to

intervene, or some other factual scenario made it impossible for the defendant officer to prevent the event which harmed the plaintiff, he/she cannot be held liable for failure to act or prevent the harm. See Ensley v. Soper, 142 F.3d 1402, 1407-08 (11th Cir. 1998); Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986); Yang v. Hardin, 37 F.3d 282, 285 (7th Cir. 1994).

## V. Discussion

In this case, careful review of the record reveals that the defendants are entitled to summary disposition in their favor of the claim pending against them, because the record evidence does not show that they failed to intervene.

According to Eggleton, on December 19, 2008, while seated as a passenger in his wife's vehicle, he and his family made a stop at a gas station. (DEs#1:5;50:5). Shortly after entering the gas station's convenience store, he noticed Riviera Beach police officers set a perimeter around the station. (Id.). He exited the convenience store making remarks to Lieutenant A. Smith, whom was parked adjacent to Eggleton's vehicle, but Smith did not respond. (Id.). Eggleton again returned to the store to make some purchases, and upon exiting the store, he made another attempt to speak to Smith, but no response was given. (Id.).

Eggleton entered the van's passenger side. As his wife began to drive away, Jackson approached Eggleton, placed him in a deadly choke hold, pulled him out of the window and threw him onto the ground. (Id.). As such, Eggleton accused Jackson of unnecessarily exhibiting excessive force when there was ample opportunity to apprehend him prior to entering the van. (Id.).

As to the remaining defendants, Eggleton alleges they all watched Jackson violate his civil rights when they were present at the time of the alleged offense, but failed to protect him. (Id.:6). Eggleton further asserts Smith, in particular, acted in this manner because Smith allegedly had an affair with the mother

of Eggleton's daughter. (DE#50:6).

According to the defendants' undisputed facts, they assert that on or about December 19, 2008, a joint operation involving the Riviera Beach Police Department, the DEA and the U.S. Marshals (the "round up") was organized with the purpose of executing multiple outstanding warrants for a variety of individuals in Riviera Beach, Florida. (DE#52:2; DE#52,Ex.A).[3] The round up was a success leading to the detainment and arrest of several individuals with outstanding warrants, including Eggleton. (Id.).

Smith's affidavit states he was a participant in the round up. (DE#52,Ex.B:1). He explains, Eggleton was arrested at the parking lot of a convenience store/gas station located at 401 Old Dixie Highway, Riviera Beach, Florida 33404. (Id.:2). Immediately prior to his arrest, Smith recognized Eggleton at the aforementioned location and alerted the other officers to his presence. (Id.). At no time does Smith recall any complaints of any injuries to any arrestee or officer during the round up. (Id.). Specifically, Eggleton did not inform the arresting officers of injury during his apprehension, immediately following same, or any time thereafter while in custody of the arresting officers. (Id.). Smith further asserts that the amount of force, if any, used during Eggleton's arrest was not excessive, was not likely to result in injury and was necessary to successfully detain him. (Id.). Finally, at no time during the round up did Eggleton speak or attempt to speak with Smith. (Id.).

A review of Jackson's affidavit also reveals he was a participant in the round up for the same purpose Smith served in the joint operation. (DE#52,Ex.3:1; See DE#52,Ex.2). According to Jackson, after Eggleton was identified, Eggleton entered the passenger side of a van driven by his girlfriend, and he instructed her to drive. (DE#52,Ex.3:2). Jackson, while facing the front of

---

[3]Defendants Smith, Byrd, Walker, Conde and Amour, in their respective motions for summary judgment, joined in the contents and requests as contained within Defendant Jackson's motion for summary judgment.

the van, instructed the driver to stop, which she subsequently did. (Id.). Despite Eggleton's allegations, Jackson did not remove Eggleton from the van. (Id.). Jackson did not physically assist in plaintiff's removal from the van or his ultimate arrest. (Id.). Jackson never touched Eggleton during his arrest. (Id.). Further, Jackson asserts he does not recall ever touching Eggleton at all during the round up. (Id.). Finally, Jackson does not recall any complaints of injuries to any arrestee or officer during the round up. (Id.). Specifically, Eggleton never informed the arresting officers of injury during his arrest, immediately following same, or any time thereafter while in the arresting officers' custody. (Id.).

Conde's affidavit in support of his summary judgment motion reveals during the around up, after announcing himself, he proceeded to cuff Eggleton. (DE#106,Ex.1). He thereafter patted down Eggleton to ensure he was not in possession of weapons. (Id.). Incident to arrest, Conde discovered crack cocaine and marijuana baggies on Eggleton's person. (Id.). Like the other officers, Conde asserts Eggleton never informed the arresting officers of injury during his arrest, immediately following same, or any time thereafter while in the arresting officers' custody. (Id.). Likewise, he does not recall excessive force used to effectuate Eggleton's arrest. (Id.).

Officer Byrd explains his role in the round up simply consisted of being a driver of one of the officer vans. (DE#117,Ex.1). Contrary to Eggleton's assertion, drugs were not planted. (Id.). At the time of Eggleton's arrest, Byrd explains he faced the opposite direction, never left the van and has no personal knowledge regarding the actual arrest. (Id.). Byrd also does not recall any complaints of injuries to Eggleton during the round up. (Id.). Specifically, Eggleton did not inform the arresting officers of any injuries sustained during his arrest, immediately following same or at any other time while in the custody of the arresting officers. (Id.).

13

Officer Armour on the other hand was not a participant in the round up and therefore, he did not have the opportunity to observe or participate therein. (DE#123,Ex.1). Armour's involvement was limited to the transportation of some of the arrestees. (Id.).

In essence, all defendants argue they never observed the occurrence of any constitutional violations, thus, never being in the position to intervene during the subject incident.

In his memorandum opposing the remaining defendants' summary judgment motions, Eggleton alleges the defendants failed to intervene, failed to turn on the car camera to video the crime at hand and no lights or sirens were utilized in conducting the stop. (DE#128:1-2). He further argues defendants are not entitled to qualified immunity because their actions were not objectively reasonable and the officers violated clearly established law. (Id.). Moreover, Eggleton provided a statement of material facts in dispute, wherein he sets forth his own version of the facts, along with an unsworn affidavit reiterating the facts as he has previously done. (Id.:3,5).

Notwithstanding, the defendants argue Eggleton failed to comply with the local rules in opposing their motions for summary judgment and has failed to attach a single affidavit or other sworn statement that supports his version of the subject arrest. (DEs#129,130,131,132,133). Likewise, Eggleton points to no record evidence supporting his assertion that the defendants are not entitled to qualified immunity. (Id.).

Since the record as a whole fails to demonstrate that the incident between plaintiff and the remaining defendants occurred due to any failure to intervene and because the undersigned has previously determined that Officer Jackson did not execute excessive force on the plaintiff, summary judgment is due to be granted in their favor on plaintiff's failure-to-protect claim. See Celotex Corp., 477 U.S. at 322. Where it is apparent there was no constitutional violation by Officers Smith, Walker, Conde, Byrd and

Armour, then it follows that there was no constitutional duty on their part to intervene and prevent Jackson from using the force in question for which Eggleton has sued Jackson. The claim of failure by Smith, Walker, Conde, Byrd and Armour to prevent Jackson's uses of force at the scene of the arrest therefore fails.

In conclusion, the officers are entitled to qualified immunity since they did not violate Eggleton's clearly established rights. Accordingly, the officers' motion for entry of summary judgment should be granted.

### VII. Conclusion

It is therefore recommended that the motions for summary judgment by defendants Smith, Walker, Conde, Byrd and Armour (DEs#106,107,108,109,110) be granted.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: May 2ND, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

cc: Julius M. Eggleton, pro se
    DC# 184064
    South Bay Correctional Facility
    600 U.S. Highway 27 South
    South Bay, FL 33493

    Benjamin Lawrence Bedard, Esq.
    Roberts Reynolds Bedard & Tuzzio
    470 Columbia Drive
    Building C - 101
    West Palm Beach, FL 33409-0709